UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYNEL DORROUGH,<br><br>　　　　　Petitioner,<br><br>　　　　v.<br><br>RON BROOMFIELD, WARDEN,<br><br>　　　　　Respondent. | Case No. 2:20-8874-JGB (MAR)<br><br>FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Final[1] Report and Recommendation is submitted to the Honorable Jesus G. Bernal, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## **SUMMARY OF RECOMMENDATION**

Petitioner, Raynel Dorrough ("Petitioner"), by and through counsel, has filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254 ("section 2254") challenging his 2017 conviction for assault with a firearm, criminal threat, and unlawful firearm activity. ECF Docket No. ("Dkt.") 1 at 6.[2] Respondent

---

[1] This Court has issued a Final Report and Recommendation that is nearly identical to the original Report and Recommendation, Dkt. 43, except that the Court has corrected a few typographical errors, all of which have no bearing on the outcome of the Court's determination in the original Report and Recommendation filed in this matter.

[2] All citations to electronically filed documents refer to the CM/ECF pagination.

filed an Answer arguing that Petitioner's sole remaining claim is not cognizable on federal habeas, or alternatively, fails under AEDPA. Dkt. 28 at 5–17. For the reasons that follow, the Court recommends (1) accepting this Report and Recommendation; (2) **DENYING** the Petition; (3) **DISMISSING** this action with prejudice; and (4) **DENYING** a Certificate of Appealability.

## II.

## PROCEDURAL HISTORY

### A. STATE COURT PROCEEDINGS

On October 17, 2017, following a jury trial in the Los Angeles County Superior Court, Petitioner was found guilty of: four (4) counts of assault with a firearm in violation of section 245(b) of the California Penal Code ("Counts 1–4"); two (2) counts of criminal threats in violation of section 422 of the California Penal Code ("Count 5–6"); and one (1) count of unlawful firearm activity in violation of section 29820(b) of the California Penal Code ("Count 7"). Dkt. 1 at 1; Lodg. 2³ at 7. The jury also found true the special allegation that Petitioner personally used a firearm in the commission of Counts 1–6, in violation of section 12022.5 of the California Penal Code. Lodg. 2 at 7, 22–23. Petitioner was sentenced to twelve (12) years and four (4) months in prison. Id.

Petitioner timely appealed his convictions to the California Court of Appeal. Dkt. 1 at 46–53. In his appeal, Petitioner presented three (3) issues:

---

³ The Court's citations to Lodged Documents refer to documents lodged in support of Respondent's January 25, 2021 Motion to Dismiss. See Dkt. 15. Respondent identifies the documents in Dkt. 11, as follows:
   1. Appellate Courts Case Information, dated October 6, 2020 for California Supreme Court case number S258169 ("Lodg. 1")
   2. Petition for review, filed on September 24, 2019 for California Supreme Court case number S258169 ("Lodg. 2")
   3. Denial order, filed on October 30, 2019 for California Supreme Court case number S258169 ("Lodg. 3")

2

(1) The trial court erred in admitting evidence pertaining to his possession of a gun in October 2016 and November 2016, violating the California Evidence Code and Petitioner's due process rights;

(2) The prosecutor's failure to disclose Petitioner's statement to the booking officer constituted a discovery violation under section 1054 et seq. of the California Penal Code and therefore the statement should have been excluded; and

(3) Petitioner was entitled to a remand for the trial court to consider whether to strike the firearm enhancement, pursuant to a recent amendment.

Id. On August 15, 2019, the California Court of Appeal affirmed the judgment but vacated the sentence and remanded the matter to the trial court to consider striking the firearm enhancement. Lodg. 2 at 19, 30–32.

On September 24, 2019, Petitioner filed a petition for review in the California Supreme Court. Lodg. 1. In his petition for review, Petitioner only presented the first two (2) issues addressed in his appeal to the California Court of Appeal. See Lodg. 2. On October 30, 2019, the California Supreme Court denied review. Lodg. 3.

**B.     FEDERAL HABEAS PETITION**

On August 28, 2020, Petitioner filed the instant Petition challenging his 2017 conviction. Dkt. 1. The Petition presented the following two (2) claims:

(1) Petitioner's right to due process and a fair trial was violated when the trial court admitted unduly prejudicial evidence of Petitioner's connections to firearms ("Claim One"); and

(2) Petitioner's right to due process was violated when the trial court concluded there was no discovery violation and failed to exclude a statement made by Petitioner during booking ("Claim Two").

Id. at 26, 31, 35.

3

On January 25, 2021, Respondent filed a Motion to Dismiss contending Petitioner failed to exhaust his state remedies for Claim Two. Dkt. 15 at 1. On February 12, 2021, Petitioner filed an Opposition in which he argued that Claim Two is "technically exhausted" and should be considered on the merits because it falls within an exception to any procedural default. Dkt. 17 at 2–3.

On April 15, 2021, the Court ordered Petitioner to either:

(1) File a motion requesting a stay pursuant to either Rhines v. Weber, 544 U.S. 269 (2005) ("Rhines stay") or Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003) ("Kelly stay"); or

(2) File a First Amended Petition, striking Claim Two.

Dkt. 19 at 5. The Court warned Petitioner that, if he failed to respond by April 29, 2021, the Court would grant Respondent's Motion to Dismiss with respect to Claim Two. Id. Petitioner did not respond.

On August 13, 2021, the Court granted Respondent's Motion to Dismiss with respect to Claim Two. Dkts. 21, 23. On November 19, 2021, Respondent filed an Answer to Petitioner's remaining clam. Dkt. 28. On March 21, 2022, Petitioner filed a Traverse. Dkt. 39. Thus, the matter stands submitted.

## III.
## **SUMMARY OF THE PETITION**

**A.  FACTUAL SUMMARY**

For a summary of the facts, this Court relies on the California Court of Appeal's opinion as those facts pertain to Petitioner's claims:[4]

> *[1]  The crimes*
>
> On a swelteringly hot afternoon in late July 2016, a big rig caught fire in the Grapevine portion of the Interstate 5 freeway north of Los

---

[4] Petitioner does not appear to argue that the California Court of Appeal opinion was based on an unreasonable determination of the facts. Furthermore, the Court has independently reviewed the trial record and finds the Court of Appeal's summary accurate. Still, the Court notes where Petitioner appears to contest a particular portion of the Court of Appeal's summary.

4

Angeles. Only the leftmost lane of the northbound I-5 remained open. Traffic was inching forward.

On their way home from an afternoon Dodger game, David Kelly (Kelly), his wife and two children (ages 15 and 10) were caught in this northbound traffic. Irked that motorists using the paved, center-divider shoulder to bypass the jam were only making things worse, Kelly and another driver behind him pulled their cars halfway into the shoulder to block those motorists from passing.

A blue Mercedes or BMW driving in the shoulder forced the car behind Kelly's to move back into the leftmost lane of traffic. When Kelly refused to move his car, [Petitioner] got out of the Mercedes or BMW, retrieved a black backpack, and returned to his car. Moments later, [Petitioner]—from inside his car and through his windshield—pointed a gun at Kelly's car. The gun was black and "appeared to be a Glock." Kelly immediately pulled fully into the shoulder and, attempting to put some distance between his family and [Petitioner], drove away at high speed. [Petitioner] followed.

A few minutes later, after the shoulder ended and Kelly was back in the stop-and-go traffic, the blue Mercedes or BMW came up along the passenger side of Kelly's car. The windows of Kelly's car were down. [Petitioner] extended his left arm out his driver's side window, pointed the gun at Kelly's car, and yelled, "If you are on the phone with the cops, I'll smoke you mother fuckers." Both Kelly and his son heard this statement. Kelly again pulled into the shoulder (which had since restarted), and again drove off at high speed.

Kelly's wife called 911, and the 911 operator directed Kelly to drive to the law enforcement officers overseeing the clean-up of the big rig accident. As Kelly was outside his car speaking with an officer, [Petitioner] drove by. Kelly pointed him out, and [Petitioner] sped off at speeds in excess of 100 miles an hour. The police were unable to overtake him.

### [2] *[Petitioner]'s arrest*

[Petitioner] was arrested approximately an hour later, some 22 miles up the road, while secreted inside a Denny's restroom. No gun was recovered. As [Petitioner] was being booked, he looked the booking officer in the eye, smiled, and spontaneously said, "You didn't find what you were looking for, did you?"

5

[Petitioner] was subsequently released from custody.

### [3] *[Petitioner]'s subsequent possession of a black Glock firearm*

In late October 2016, [Petitioner] was filmed with a black Glock firearm in his lap.

In early November 2016, [Petitioner] was arrested in Yolo County. [Petitioner] had been driving a black Mercedes. Inside that car, police recovered (1) a loaded, black, semi-automatic Glock firearm, which was "underneath the driver's seat," and (2) [Petitioner]'s driver's license, which was on the floorboard below the steering wheel.

Kelly testified that he was familiar with guns, and that while he could not "say for certain" that the gun depicted in a screenshot from the October 2016 video and the gun seized from [Petitioner] in November 2016 was "the exact same gun" as the gun [Petitioner] pointed at him in July 2016, Kelly testified that they were "similar." Kelly's son testified that the guns he was shown from the October and November 2016 incidents were "extremely similar" to the gun he saw [Petitioner] point at him in July 2016. A firearm expert testified that the gun depicted in the October 2016 video and the gun seized from [Petitioner] in November 2016 were "very similar" insofar as they each had their plating "bent down almost to the same exact point."

Dkt. 1 at 42–44.

**B.  PETITIONER'S CLAIM FOR RELIEF**

Petitioner's sole remaining claim is that Petitioner's right to due process and a fair trial was violated when the trial court admitted unduly prejudicial evidence of Petitioner's connections to firearms. Dkts. 1 at 31–35; 21–23 (Report and Recommendation and Order dismissing Claim Two ).

## IV.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Here, Petitioner's claim arises under § 2254(d)(1).

"Clearly established Federal law" for purposes of § 2254(d)(1) consists of the "the holdings, as opposed to the dicta, of th[e] [United States Supreme] Court's decisions" in existence at the time of the state court adjudication. Williams v. Taylor, 529 U.S. 362, 412 (2000). However, "circuit court precedent may be 'persuasive' in demonstrating what law is 'clearly established' and whether a state court applied that law unreasonably." Maxwell v. Roe, 628 F.3d 486, 494 (9th Cir. 2010).

A state court decision rests on an "unreasonable application" of federal law for purposes of § 2254(d)(1) where a state court identifies the correct governing rule, but unreasonably applies that rule to the facts of the particular case. Andrews v. Davis, 944 F.3d 1092, 1107 (9th Cir. 2019) (citing Williams, 529 U.S. at 407–08). "It is not enough that a federal habeas court concludes 'in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Id. (citing Lockyer v. Andrade, 538 U.S. 63, 76 (2003)). "The state court's application of clearly established law must be objectively unreasonable." Lockyer, 538 U.S. at 75.

Overall, AEDPA established "a difficult to meet . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal citation and quotation marks omitted). "That deference, however, 'does not by definition preclude relief.'" Andrews, 944 F.3d at 1107 (citing Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)).

Where the last state court disposition of a claim is a summary denial, this Court must review the last reasoned state court decision addressing the merits of the claim

7

1 under AEDPA's deferential standard of review. Maxwell, 628 F.3d at 495; see
2 also Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991).
3      Here, the California Court of Appeal's August 15, 2019 opinion is the last
4 reasoned decision addressing the merits of Petitioner's claims. Dkt. 1 at 41–54.

## V.

## DISCUSSION

**A. AEDPA PRECLUDES HABEAS RELIEF ON CLAIM ONE BECAUSE THE CALIFORNIA COURT OF APPEAL DID NOT UNRESAONABLY APPLY CLEARLY ESTABLISHED FEDERAL LAW**

**1. Applicable Law**

The exclusion or admission of evidence under state evidentiary rules generally does not present a cognizable federal habeas claim. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (state evidentiary ruling does not give rise to a cognizable federal habeas claim unless the ruling violated a petitioner's due process right to a fair trial); Rhoades v. Henry, 638 F.3d 1027, 1034 n.5 (9th Cir. 2011). However, an improper evidentiary ruling violates due process, and thus warrants habeas relief, if it renders a trial fundamentally unfair. Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (citing Estelle, 502 U.S. at 67–68). Still, "[u]nder AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court." Holley, 568 F.3d at 1101. The Ninth Circuit has held there is no "clearly established federal law" that a state court's decision to allow propensity evidence violates due process because the Supreme Court has expressly reserved consideration of the issue. Alberni v. McDaniel, 458 F.3d 860, 863–67 (9th Cir. 2006).

///
///

### 2. Court of Appeal Decision

The Court of Appeal rejected Petitioner's claim as follows:

> It is well settled that evidence of a person's propensity to engage in certain contact "is inadmissible when offered to prove his or her conduct on a specified occasion." … This is why evidence that a defendant's possession "of a weapon not used in the crime charged" is generally inadmissible, as it "leads logically only to an inference that [the] defendant is the kind of person who surrounds himself with deadly weapons."
>
> …
>
> However, this general rule of inadmissibility does not apply when the weapon the defendant at some other time possessed "resemble[s]," is "similar" to, "looks like," or "'might have been'" the weapon used in the charged crime(s) because the prior or subsequent possession of potentially the same weapon tends to prove a defendant's identity as the perpetrator or his use of the weapon at issue during the charged crime(s).[5] … For these purposes, "positive[] identif[ication]" that the weapons are the same is not required.
>
> …
>
> Applying these principles, the trial court did not abuse its discretion in admitting the evidence that [Petitioner] possessed a black, semi-automatic Glock in October 2016 and in November 2016. That is because both Kelly and his son testified that the gun they saw [Petitioner] wield during the charged July 2016 incident was, respectively, "similar" and "extremely similar" to the guns defendant possessed in October and November 2016. What is more, the trial court so ruled only after conducting a hearing outside the presence of the jury to inquire whether Kelly was going to testify that the weapons were "similar" (as the People had proffered). The trial court also gave the jury a limiting instruction—at the time the evidence was introduced as well as at the conclusion of trial—admitting the evidence only "for the limited purpose of deciding whether or not the People proved that [] defendant possessed a firearm for all the charges listed in the information on July 27, 2016" and expressly prohibiting its use to "conclude . . . that [] defendant has a bad character or is disposed to commit crime." Given the probative value of this

---

[5] The rule also does not apply when the weapon—even if certainly not the weapon used in the charged crime(s)—is relevant for any other non-propensity purpose under Evidence Code section 1101, subdivision (b)…

9

>evidence under the above stated precedent and the limiting instructions' effect in mitigating the danger of any unfair prejudice, the trial court also did not abuse its discretion in admitting this evidence under Evidence Code section 352. And because the admission of evidence complied with state evidentiary law, it did not violate any of the federal constitutional provisions [Petitioner] cites.

Dkt. 1 at 46–48 (citations omitted).

### 3. Analysis

Here, Petitioner's sole remaining claim is that his due process rights were violated when the trial court admitted unduly prejudicial evidence that showed Petitioner had connections to firearms months after the incident that formed the basis for his conviction. Dkt. 1 at 31–35. Petitioner argues there were no permissible inferences the jury could have drawn from the gun evidence, and that it was only relevant to show propensity to commit a crime. Dkt. 39-1 at 3–7.

Petitioner fails to show he is entitled to habeas relief because, even if the trial court did erroneously admit propensity evidence, there is no clearly established federal law that such an error constitutes a violation of due process. Alberni, 458 F.3d at 863–67. Absent such clearly established federal law, this Court cannot conclude the California Court of Appeal's conclusion that the admission of the gun evidence did not violate Petitioner's constitutional rights was unreasonable under § 2254(d)(1); therefore, AEDPA precludes this Court from granting relief on Petitioner's claim. See Holley, 568 F.3d at 1101 ("[The Supreme Court] has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such 'clearly established Federal law,' we cannot conclude that the state court's ruling was an 'unreasonable application' …Under the strict standards of AEDPA, we are therefore without power to issue the writ…").

Petitioner cites McKinney v. Rees, 993 F.2d 1378, 1384-388 (9th Cir. 1993) and Kipp v. Davis, 971 F.3d 939, 956 (9th Cir. 2019) to support his claim that his due process rights were violated. Dkt. 39–1 at 3–7. Petitioner acknowledges McKinney is

1 a pre-AEDPA case, but argues it still governs Petitioner's claim here because the
2 Ninth Circuit has affirmed McKinney post-AEDPA, in Kipp. Id. Petitioner is
3 correct that Kipp affirms McKinney with regard to its propositions of due process
4 law, generally. However, Kipp does nothing to help Petitioner overcome the obstacle
5 of AEDPA. Though Kipp was post-AEDPA, the Ninth Circuit first concluded the
6 state court had denied Kipp's claim based on an unreasonable determination of the
7 facts under section 2254(d)(2), and therefore AEDPA deference no longer applied
8 when the court reached Kipp's due process claim. Kipp, 971 F.3d at 955.
9 Accordingly, when the Ninth Circuit cited McKinney to grant Kipp relief on his due
10 process claim, it was evaluating the claim de novo, and therefore approaching the
11 claim from the same posture as the pre-AEDPA court in McKinney.
12       This is not the case here—Petitioner does not allege the California Court of
13 Appeal's rejected his claim based on an unreasonable determination of the facts, nor
14 does he argue this Court can somehow otherwise evaluate his claim without applying
15 deference under AEDPA. Accordingly, this Court cannot reach the merits of
16 Petitioner's due process claim de novo, as the Ninth Circuit did in McKinney and
17 Kipp. Here, the Court's analysis must end at an earlier stage; because there is no
18 clearly established law that erroneous admission of propensity evidence violates due
19 process, even if the Court credits Petitioner's argument that the gun evidence was
20 only relevant for propensity purposes, a federal court is powerless to contradict the
21 California Court of Appeal's decision and grant Petitioner relief.
22 **B.    EVEN IF THE COURT COULD REVIEW PETITIONER'S DUE**
23      **PROCESS CLAIM DE NOVO, IT WOULD STILL FAIL**
24    **1.    APPLICABLE LAW**
25       "The admission of evidence does not provide a basis for habeas relief unless it
26 rendered the trial fundamentally unfair in violation of due process." Holley, 568 F.3d
27 at 1101 (quoting Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995)). "Only if there
28 are no permissible inferences the jury may draw from evidence can its admission

violate due process." Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991). (emphasis in original). "Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'" Id. (citation omitted).

### 2. ANALYSIS

Here, even if the Court applied § 2254(d)(2) sua sponte and was able to review the claim de novo, Petitioner would not be entitled to relief because there were permissible inferences the jury could have drawn from the gun evidence. The prosecution presented evidence showing that in July 2016, Petitioner pointed a gun at Kelly's car and threatened to shoot him. Dkt. 29-3 at 21–22. Law enforcement did not find the gun in Petitioner's possession when he was arrested. Id. at 23. Kelly testified that he had grown up owning guns and owned several at that time, including a Glock. Id. at 93. Kelly identified both the gun pointed at him in Jul 2016 and the guns in the disputed evidence as Glocks. Id. at 93, 106, 108. Though he could not say for certain the guns were the same one pointed at him in July 2016, he testified that they were similar. Id. at 108–09, 244–46. Kelly's son also testified he had experience with guns and that the guns in the photographs were similar to the one pointed at him in July 2016. Id. at 154–56. An officer also testified that the guns shared a similarity on their metal identification plate. Dkt. 29–4 at 15–18.

The jury could have inferred from this testimony that the guns in the video and photograph were the same one used in the July 2016 incident. In fact, the prosecution argued as much in their closing argument—that, after the incident, Petitioner hid the gun on the side of the road and later retrieved it. Id. at 146–48. While it is a reasonable inference that the gun from the video and photograph was not the same gun from the incident, that does not discount the fact that the inference that the guns were all the same gun was also reasonable. If the jury concluded that Petitioner, months after the July 2016 incident, was in possession of the same gun used in the incident, that would go towards establishing Petitioner's identity as the wielder of the gun. Because the jury could have drawn a reasonable inference from the

12

gun evidence regarding Petitioner's identity as the gun wielder at the July 2016 incident, the admission of the evidence could not have violated Petitioner's right to due process. See Walker v. Clark, No. CV 20-1622-JWH (PD), 2021 WL 3193226 (C.D. Cal. Mar. 31, 2021), report and recommendation adopted, No. CV 20-1622-JWH (PD), 2021 WL 4196977 (C.D. Cal. Sept. 15, 2021) (holding due process was not violated because the jury could make the reasonable inference that a gun in an admitted photograph could have been the same gun used in a crime, even where the gun was not definitively identified).

## VI.
## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), a Certificate of Appealability may issue "if the applicant has made a substantial showing of the denial of a constitutional right." The Supreme Court has held that this standard means a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 483–84 (2000). The undersigned finds that reasonable jurists could not debate whether Petitioner is entitled to relief on his due process claim. Thus, it is recommended that a Certificate of Appealability be **DENIED**.

///
///
///
///
///
///
///
///
///

## VII.
## **RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that the Court issue an Order:

(1) accepting this Report and Recommendation;

(2) **DENYING** the Petition;

(3) **DISMISSING** this action with prejudice; and

(4) **DENYING** a Certificate of Appealability.

Dated: October 20, 2022

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge